NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **Criminal No. 21-00251 (SRC)** |
| v. | : | |
| | : | |
| CORNELIUS ROYSTER | : | **OPINION & ORDER** |
| | : | |

**CHESLER**, District Judge

This matter comes before the Court on the omnibus pretrial motion filed by Defendant Cornelius Royster ("Defendant" or "Royster").   (ECF No. 24).  The United States of America ("the Government") has responded to his motion.  (ECF No. 28).  The Court rules on the various requests contained in Defendant's omnibus application as follows.

I.    BACKGROUND[1]

On February 12, 2021, members of the Jersey City Police Department ("JCPD") were monitoring closed-circuit television ("CCTV") in the area of Monticello Avenue in Jersey City. At 8:28 PM, they observed Don Williams ("Williams") conduct what they believed to be a hand-to-hand narcotics transaction with an unidentified male near the corner of Monticello Avenue and Jewett Avenue.  The unidentified male handed something to Williams, which Williams placed in his left pocket.  Williams then entered a white vehicle with tinted windows and shut the door.  Six seconds later, Williams exited the vehicle, returned to the unidentified male, and handed the

---

[1]    All facts contained in the Background section are drawn from the Investigation Report and Supplementary Investigation Report submitted as Exhibits to the Government's Opposition.

unidentified male an item from his right pocket.  After this exchange, the unidentified male walked away, and the officers observed Williams remove green currency from his left pants pocket and begin to count it.

Williams re-entered the vehicle and drove to the corner of Monticello Avenue and Belmont Avenue.  He parked the vehicle, got out, and approached a group of approximately ten males.  The vehicle was still parked at the corner of Monticello and Belmont when, around 8:45 PM, Defendant attempted to enter the passenger-side door.  He was unable to gain entry through the passenger-side door, so he instead entered through the driver's side of the vehicle.  At 9:06 P.M., Williams returned to the car and also entered via the driver-side door.  At 9:13 P.M., another individual, Damar Bowens ("Bowens"), placed a white bag in the trunk of the car.  Eventually, Bowens and a fourth individual, Rashem Parker ("Parker"), entered the rear driver and passenger seats.  The vehicle then began traveling west on Belmont Avenue and then north on Bergen Avenue, at which point law enforcement followed the vehicle.

Shortly thereafter, law enforcement conducted a motor vehicle stop on the grounds that the vehicle had heavily tinted windows and an inoperable driver side taillight.  As the officers approached the car, they loudly ordered the occupants to lower the windows.  Initially, only Williams, the driver, lowered his window.  After more commands, all four windows in the vehicle were partially lowered, and the driver's side window was lowered completely.  Royster, as the front passenger, never complied with the order to open the window completely.

Once the windows were lowered, Police Officer Chiarella ("Officer Chiarella") requested Williams' license, registration and insurance multiple times.  During this interaction, Officer Chiarella observed Williams shifting his attention to the passenger side of the vehicle, where Defendant was seated.  Officer Chiarella also observed Royster reaching his left hand towards his

right side notwithstanding multiple orders that he show his hands and stop moving.  Officer Chiarella ordered Williams to turn off and exit the vehicle and advised that, if Williams failed to comply, he would be put under arrest for obstruction.  Williams did not comply and continued to question the officer's command.  Officer Chiarella then reached in to unlock the door, removed Williams from the vehicle, and placed him under arrest for obstruction.  Once Williams was handcuffed, Officer Chiarella performed a pat-down and search of Williams that was negative for weapons or other contraband.

Around this time, Police Officer Azmy ("Officer Azmy") also removed Royster from the front passenger seat of the vehicle.  He then performed a pat-down of Royster and felt an object consistent with the size, shape, and weight of a handgun in his right jacket pocket.  Officer Azmy recovered the handgun from Royster's person.  The handgun was a Rossi Interarms 5 shot .38 special revolver, with a defaced serial number, loaded with two live rounds and three spent rounds of ammunition.  Defendant was then placed in handcuffs and searched again.  During this search, the officers recovered twelve glassine bags of heroin stamped "BBQ Chicken" from Royster's underwear.

Royster was charged with firearm and narcotics offenses in New Jersey Superior Court.  On March 24, 2021, a federal grand jury returned a one count Indictment charging Royster with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Royster has also been charged by federal complaint with possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), but the parties have agreed to a continuance on this charge through the date of trial.  The state charges against Royster were dismissed after he was indicted on the federal charges.

3

Rosyter now brings an omnibus pretrial application seeking: (1) an order suppressing the evidence seized during the search of his person after the car was stopped; (2) bifurcation of the trial on the § 922(g)(1) charge to avoid prejudicing the jury with evidence of his prior conviction and amendment of the indictment accordingly; (3) an order requiring the Government to produce any character evidence it intends to offer at trial under Federal Rule of Evidence 404(b); (4) an order requiring the Government to identify (i) any expert witnesses it intends to use at trial, (ii) any charts or other summaries it intends to rely upon, and (iii) any matters upon which it intends to request the Court take judicial notice at trial; (5) compelled production of tangible objects pursuant to Federal Rule of Criminal Procedure 16; (6) compelled production of all exculpatory material, including *Giglio* material; (7) compelled production of all Jencks Act materials and an order requiring the Government to preserve all rough notes, interview notes, report drafts, and final reports prepared during the investigation; (8) an order requiring the Government to produce Defendant's criminal record; (9) compelled production of a list of people with knowledge of the case; (10) an order requiring the Government to produce a list of witnesses it intends to use at trial; (11) compelled production of the criminal records of the Government's witnesses; (12) compelled production of written statements from individuals the Government does not intend to call as witnesses during the trial; (13) disclosure of grand jury transcripts; (14) compelled production of all video and audio recordings pursuant to Federal Rule of Criminal Procedure 16; (15) an order requiring the Government to produce evidence of any promises, compensation, or benefits it has provided to any of its witnesses, and; (16) permission to file additional motions.  The Court addresses Defendant's requests below.

## II.   DISCUSSION

### A. Defendant's Request for An Order Suppressing Evidence Seized in Violation of His Fourth Amendment Rights (Point I)[2]

Defendant contends the JCPD officers were in violation of his Fourth Amendment rights when they conducted the pat-down of his person after he was ordered from the car.[3]  The Fourth Amendment protects individuals from unreasonable searches and seizures.  U.S. Const. amend. IV.   The "basic purpose of this Amendment . . . is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials."  *Camara v. Mun. Court of City & Cnty. of S.F.,* 387 U.S. 523, 528 (1967).   "Generally, for a seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based on probable cause."  *United States v. Robertson*, 305 F.3d 164, 167 (3d Cir. 2002).   "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement."  *Riley v. California*, 573 U.S. 373, 382 (2014).

The Supreme Court has held that, once a vehicle has been lawfully stopped, the police may order its driver and any passengers in the vehicle to exit without violating the Fourth Amendment. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) (holding that police officers may command the driver of a vehicle to exit after the vehicle has been legally detained); *Maryland v. Wilson*, 519 U.S. 408, 414 (1997) (extending *Mimms* to include passengers).   And, to ensure officer safety

---

[2]     The parenthetical references in the section headings throughout this Opinion & Order refer to the numbered requests for relief in Defendant's brief.

[3]     Defendant accepts, for sake of argument, that the JCPD was empowered to stop the vehicle in the first instance and subsequently remove Defendant from the vehicle, but expressly reserves the right to challenge the constitutionality of these actions pending the consideration of further video evidence.  (Def. Br. at 4 n.3.)

during traffic stops, the police may briefly frisk an individual once he is outside the vehicle if they reasonably suspect that the individual is armed and dangerous. *Arizona v. Johnson*, 555 U.S. 323, 332 (2009). The determination of whether law enforcement had a particularized and objective basis for the reasonable suspicion giving rise to a pat-down, or frisk, must be made upon the totality of the circumstances, *United States v. Arvizu*, 534 U.S. 266, 272 (2002), while "giving due weight to the experience of the officers," *United States v. Yamba,* 506 F.3d 251, 255 (3d Cir. 2007).

According to Defendant, the pat-down at issue here was constitutionally deficient on the grounds that the record "is devoid of any evidence that the Defendant participated in the alleged drug transaction or that any type of weapon was used during the same" and that there were no indicia of criminal activity or the presence of a weapon sufficient to conduct a pat-down of Defendant's person. (Def. Br. at 4–5.) For Defendant, the "only observation[s]" relevant to the inquiry were "innocuous furtive movement[s]" by Defendant. (Def. Br. at 5.) Relying on *United States v. Alvin*, 701 F. App'x 151, 155 (3d Cir. 2017), Defendant argues that nervous behavior in a high-crime area, by itself, is not sufficient to find reasonable suspicion. *Id.* ("[N]ot every slouch, crouch, or other supposedly furtive movement justifies a stop. This may be especially true in proverbial 'high-crime' areas, where residents may simply want to avoid encounters with police for reasons unrelated to any criminal conduct on their part.").

The officers here did not, however, rely solely on a single instance of nervous behavior, and the totality of the circumstances provide more than adequate support for their actions. The officers had observed the driver of the vehicle in which Royster was a passenger engage in at least one suspected hand-to-hand narcotics transaction only minutes before the stop. *See United States v. Anderson*, 859 F.3d 1171, 1177 (3d Cir. 1988) (upholding the district court's denial of a motion to suppress the fruits of a pat-down search where the officer reasonably believed the defendant

was involved in drug trafficking and was, therefore, "concerned . . . because persons involved with drugs often carry weapons"). Once the vehicle was pulled over, the passengers initially all failed to comply with the officers' order to roll down the windows. Indeed, Defendant never fully complied with this command—he only rolled down the window partially after continued requests by the officers. Furthermore, according to the investigative reports, which Defendant does not dispute, when faced with repeated orders to stop moving and show his hands Defendant continuously reached his left hand towards his right side. *See United States v. Moorefield*, 111 F.3d 10, 14 (3d Cir. 1997) (denying a motion to suppress evidence where the defendant disobeyed the officer's instructions to remain in the car with his hands in the air and instead leaned back and shoved something down toward his waist, pushed his upper body through the window, and raised and lowered his hands several times). It is in this context that Officer Azmy performed a pat-down of Defendant's outer clothing for his and his fellow officers' safety and felt an object consistent with the size, shape, and weight of a handgun. Viewing the totality of the circumstances, Officer Azmy had reasonable suspicion for the pat-down.

In sum, Defendant's actions and mannerisms, combined with the reasonable inferences the officers drew from them in light of their experience, embody the specific, articulable facts necessary to justify a frisk of Defendant. Moreover, because Defendant has not identified any facts which controvert the police reports, he has established neither a colorable claim for relief nor an issue of contested material fact related to his motion to suppress. Therefore, his request for a hearing on the merits of his motion is also denied.[4]

---

[4]      Evidentiary hearings are not required for pretrial motions as a matter of course. *See* Fed. R. Crim. P. 12(c). A defendant is entitled to an evidentiary hearing on a motion to suppress if the motion is "sufficiently specific, non-conjectural, and detailed" to enable the court to conclude that it presents "a

**B. Defendant's Request to Bifurcate the Trial and Amend the Indictment Accordingly (Point II)**

Defendant next seeks to bifurcate the trial to preclude the Government from introducing evidence of his prior criminal record, and to amend the Indictment accordingly.  (Def. Br. at 6–8.) Failure to do so, according to Defendant, will "confuse the jury, unduly influence their feelings toward him, and ultimately deny him a fair trial . . . ."  (Def. Br. at 6.)

It is well-established precedent within the Third Circuit that it is not appropriate to bifurcate a trial involving only a single felon in possession charge.  *See United States v. Jacobs*, 44 F.3d 1219, 1223 (3d Cir. 1995) (collecting cases); *see also United States v. Higdon*, 493 F. App'x 261, 263–64 (3d Cir. 2012) (non-precedential) (upholding the trial court's denial of the defendant's motion to bifurcate).  Because Defendant's § 922(g) is not joined with any other charges, he is not entitled to a bifurcated trial.  His motion will be denied.

**C. Defendant's Request for Disclosure of Rule 404(b) Evidence (Point III)**

Defendant seeks disclosure of any character evidence the Government intends to offer at trial pursuant to Federal Rule of Evidence 404(b) and requests an evidentiary hearing regarding the admissibility of that evidence. (Def. Br. at 9).  While the Government correctly states that the Rule does not provide a specific time limit as to when Rule 404(b) materials must be produced, it also recognizes the benefits of pretrial disclosure.  (Gov. Br. at 7–8.)  The Court orders the

---

colorable constitutional claim" and "there are disputed issues of material fact that will affect the outcome" of the motion.  *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010).

Government to make its Rule 404(b) disclosures one week prior to the trial start date in this matter. At that time, Defendant may renew his motion for an evidentiary hearing.[5]

### D. Defendant's Request for Disclosure of Expert Testimony (Point IV)

Defendant requests materials related to the expert testimony which the Government intends to use at trial. (Def. Br. at 10.) The Government states it will make these disclosures at least thirty days prior to trial. (Gov. Br. at 8.) The Court finds that the Government's proposed timeline is appropriate and orders the Government to make these disclosures no later than thirty days prior to the trial start date.[6]

### E. Defendant's Request for the Production of Tangible Objects and Video and Audio Recordings (Points V, XIV)

Defendant seeks an order directing the Government to produce materials required under Federal Rule of Criminal Procedure 16. (Def. Br. at 10–12, 24.) The Government represents that it is aware of its obligations under Rule 16, has complied with these obligations, and will continue to do so. (Def. Br. at 8.) With respect to Defendant's request for video and audio recordings specifically, the Government represents that it has produced all such recordings in its possession. (Def. Br. at 18.) The Court finds the Government's response adequately addresses Defendant's request and the request is denied.

---

[5] Additionally, the Government should advise Defendant immediately if it intends to use evidence of prior bad acts to impeach him pursuant to Rule 609.

[6] Defendant also requests that the Government identify any matters of which it will seek to have the Court take judicial notice and produce any charts or summaries which it intends to use sufficiently in advance of trial to afford the defense an adequate opportunity to make *in limine* motions addressing any evidentiary issues that may arise. (Def. Br. at 10.) The Court orders the Government to make these disclosures no later than three days prior to the trial start date.

**F.  Defendant's Request for Disclosure of *Brady* Material (Point VI)**

Royster seeks the production of evidence and materials as required under *Brady v. Maryland*, 373 U.S. 83 (1963).  (Def. Br. at 12–15.)  The Government has recognized its obligation to provide *Brady* material and affirmed that it has complied with this obligation thus far and will continue to do so should any new exculpatory material comes into its possession.  (Gov. Br. at 8–9).  The Court finds the Government's response adequately addresses Defendant's request for *Brady* disclosures and the request is denied.

**G.  Defendant's Request for Disclosure of *Giglio* and Jencks Act Materials (Points VI, VII, XI, XV)**

Defendant next requests the Government disclose impeachment material required under *Giglio v. United States*, 405 U.S. 150 (1972).  He also requests disclosure of prior statements, reports, and notes produced by the Government's witnesses, and further asks that the Government produce such Jencks Act material prior to trial.  (Def. Br. at 12–15, 21–22.)  As the Government highlights, it is not obligated to provide these materials prior to trial.  *United States v. Higgs*, 713 F.2d 39, 44 (3d Cir. 1983); *United States v. Murphy*, 569 F.2d 771, 773 (3d Cir. 1978).  Indeed, the Court lacks the authority to compel the production of Jencks Act material prior to the completion of direct examination.  *Murphy*, 569 F.2d at 773.  Nevertheless, the Government proposes to provide all *Giglio* and Jencks materials to Defendant one week before trial.  (Gov. Br. at 10–11).  The Court finds the Government's response adequately addresses Defendant's request.

In turn, the Government requests the Court order Defendant to reciprocate by providing any defense Jencks material at least three days in advance of the testimony of the defense's witnesses.  (Gov. Br. at 11).  Because there is no obligation that defendants provide prior

statements of their witnesses before a witness's testimony, and because the Court may not order the Defendant to do so, this request by the Government is denied.

Defendant also seeks an order requiring the Government to preserve all "rough notes, interview notes, report drafts and final reports that were prepared . . . in connection with the investigation that led to this indictment." (Def. Br. at 15.) The Government represents that it is aware of its obligation to preserve and retain the notes of law enforcement agents pursuant to *United States v. Vella*, 562 F.2d 275, 276 (3d Cir. 1977), and will direct law enforcement to preserve them. (Gov. Br. at 11.) The Court finds the Government's response adequately addresses Defendant's request and the request is denied.

**H. Defendant's Request for His Criminal Record (Point VIII)**

Defendant requests that the Government produce his prior criminal record in the form of certified judgments of conviction. (Def. Br. at 15.) The Government maintains that it has already produced his judgements of conviction, has requested certified copies of those judgments of conviction, and will produce them to Defendant upon receipt. (Gov. Br. at 11–12.) The Court finds the Government's response adequately addresses Defendant's request and the request is denied.

**I. Defendant's Request for a List of Individuals with Knowledge of the Case, Witness Lists, and Written Statements of Non-Witnesses (Points IX, X, and XII)**

Defendant seeks the production of a list of individuals with knowledge about the case, the Government's witness list, and all written statements of non-witnesses. (Def. Br. at 16-20.) The Court addresses each request separately below.

11

### 1.   Individuals with Knowledge of the Case (Point IX)

Defendant seeks the production of a list of individuals with knowledge about the case. (Def. Br. at 16–19.)  Defendant acknowledges, however, that the Government need not turn over this material under Rule 16.  (Def. Br. at 16.)  Nevertheless, Defendant attempts to justify his request by analogy to the Government's obligation to turn over exculpatory or mitigating materials.  (Def. Br. at 17.)  However, Defendant's request for all individuals with knowledge of the case goes well beyond the Government's constitutional obligations.  And Defendant does not identify any specific circumstances that weigh in favor of his request.  Indeed, as the Government points out, "it is unlikely" that Defendant has had any difficulty identifying the witnesses to the alleged crime here because most of the witnesses were present at the time of the vehicle stop. (Gov. Br. at 12.)  As such, Defendant's request will be denied.

### 2.   Witness Lists (Point X)

With respect to his request for the Government's witness list, Defendant again acknowledges that its disclosure is not mandated by Rule 16 but asks that the Court exercise its discretion in issuing such an order.  *See Higgs*, 713 F.2d at 44 ("While it is true that the government is not automatically required to make such disclosure, *cf.* 18 U.S.C. § 3432 (1976) (capital cases), the district court, within its discretion, may order such disclosure to ensure the effective administration of the criminal justice system.").  Defendant identifies various factors which the Court may consider when deciding whether to exercise this discretion, including tactical disadvantage, judicial efficiency, effective *voir dire* of the jury, and the Court's ability to enter a protective order to mitigate any negative consequences of disclosure.  (Def. Br. at 19–20.)  As Defendant points out, mandating the disclosure of this information is more appropriate in

12

"complex cases." (Def. Br. at 19–20.) This is not such a case. Therefore, Defendant's request is denied.

### 3. Written Statements of Non-Witnesses (Point XII)

Finally, Defendant seeks an order compelling the Government to produce written statements of individuals that it does not plan to call as witnesses. He appears to contend that Rule 16 mandates the disclosure of these statements "for the same reasons" it makes the statements of an individual's codefendants discoverable. (Def. Br. at 22.) But, in the Third Circuit a "defendant is not entitled to discovery of the statements of his codefendants." *United States v. Maury*, 695 F.3d 227, 251 n.21 (3d Cir. 2012); *see also United States v. Coles*, 511 F. Supp. 3d 566, 579 (M.D. Pa. 2021). It follows that Defendant is not entitled to the statements of non-witnesses under Rule 16 either. Moreover, to the extent that any of these statements constitute *Brady* materials, as discussed above, the Government has recognized its continuing obligations under *Brady*. The Court finds that the Government's response in this regard is adequate to address Defendant's request and his request is denied.

### J. Defendant's Request for Grandy Jury Testimony (Point XIII)

Defendant next seeks the transcripts of testimony offered before the grand jury resulting in the instant indictment. As relevant here, Federal Rule of Criminal Procedure 6(e)(3)(E)(I) permits the Court to order the disclosure of grand jury proceedings "preliminarily to or in connection with a judicial proceeding." Disclosure of grand jury transcripts is appropriate where the defendant shows a "particularized need" for the materials that outweighs the public interest in secrecy. *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989).

Defendant does not set forth a compelling and particularized need for the grand jury

testimony here, but rather seeks disclosure of the testimony to "aid [him] in cross-examination and impeachment of witnesses," and to allow him to "adequately prepare a defense." (Def. Br. at 24). That is not a ground for abrogating the secrecy of the grand jury. Accordingly, Defendant's motion for pretrial discovery of grand jury testimony is denied.

### K. Defendant's Request for Permission to File Additional Motions (Point XVI)

Finally, Royster reserves the right to file additional motions based on discovery of which he is not yet in possession and any further investigation he might undertake. (Def. Br. at 26.) The Government does not oppose this request and also reserves its own right to file additional motions with the same limitations. (Gov. Br. at 14). The Court orders that both parties have the right to file additional motions based on discovery material and other information that was not previously available to them prior to Defendant's filing of the instant motion.

## III.   ORDER

As set forth above, the dispositions of Defendant's various motions contained in his omnibus application, (ECF No. 24), are **SO ORDERED**; and it is further

**ORDERED** that Defendant's omnibus pretrial motion, (ECF No. 24), is **TERMINATED**.

 s/ Stanley R. Chesler    
STANLEY R. CHESLER
United States District Judge

Dated: June 23, 2022

14